**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ENCHANTEDMOB, INC. and MOB ENTERTAINMENT, INC., | Case No. 24-cv-03997 |
| Plaintiffs, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

EnchantedMob, Inc. and Mob Entertainment, Inc. (together, "Plaintiff") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademark and/or unauthorized copies of Plaintiff's federally registered copyrighted works (collectively, the "Unauthorized Poppy Playtime Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Unauthorized Poppy Playtime Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Poppy Playtime Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademark and infringement of its registered copyrighted works, as well as to protect unknowing consumers from purchasing Unauthorized Poppy Playtime Products over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion,

dilution, and tarnishment of its valuable trademark and infringement of its copyrighted works as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.    Plaintiff EnchantedMob, Inc. and Mob Entertainment, Inc. are corporations with their principal place of business in St. Louis, Missouri.

5.    Plaintiff is a digital entertainment company that creates and distributes high quality animated content across multiple platforms. Plaintiff's focus is on the production and distribution of digital content and playable video games. Most notably, Plaintiff developed and released the world-famous video game, Poppy Playtime. Plaintiff released the first chapter (Chapter 1) of Poppy Playtime, "A Tight Squeeze," on October 12, 2021, the second chapter (Chapter 2), "Fly in a Web," on May 6, 2022, and a spin-off multi-player game, "PROJECT: Playtime," on December 12, 2022. The third chapter (Chapter 3), "Deep Sleep," was released on January 30, 2024.

6.    Poppy Playtime is a first-person survival horror game that involves an unnamed protagonist who is called upon to investigate a mystery at a toy factory abandoned by the fictional toy company Playtime Co. The player must solve puzzles in order to progress further, all while avoiding the game's main antagonist, Huggy Wuggy, a large humanoid figure that once acted as the mascot of Playtime Co. Huggy Wuggy and other characters associated with the game have gained significant popularity among those in the gaming community and abroad. Some of these famous characters and other elements from Poppy Playtime and PROJECT: Playtime are displayed in the following chart:

| | |
|---|---|
| Huggy Wuggy |  |
| Mommy Long Legs | |
| Poppy | |

| | |
|---|---|
| Kissy Missy |  |
| Killy Willy |  |
| Grab Pack. |  |
| Playtime Co |  |

| | |
|---|---|
| Boogie Bot |  |
| Candy Cat. |  |
| Bunzo Bunny. |  |
| Daddy Long Legs |  |
| PJ Pug-a-Pillar |  |
| The Player |  |
| Bron |  |
| Poppy Playtime |  |

| | |
|---|---|
| Baby Long Legs |  |
| Boxy Boo! |  |
| PROJECT: PLAYTIME Huggy (smile) |  |
| PROJECT: PLAYTIME Kissy Missy (teeth) |  |
| PROJECT: PLAYTIME Train |  |
| PROJECT: PLAYTIME Logo |  |

| | |
|---|---|
| PROJECT: PLAYTIME Coin |  |
| PROJECT: PLAYTIME Ticket |  |
| Catbee |  |
| Daisy |  |
| Kick-me-Paul |  |
| Owen the Oven |  |

| | |
|---|---|
| Sir Poops-A-Lot |  |
| PROJECT: PLAYTIME Player |  |
| PROJECT: PLAYTIME Phone (Phase 2) |  |
| PROJECT: PLAYTIME Logo (Phase 2) |  |
| CH3 Main Character (big) |  |

| | |
|---|---|
| CH3 Main Character (plush) |  |
| CH3 Character 2 (plush) |  |
| CH3 Character 3 (plush) |  |
| CH3 Character 4 (plush) |  |
| CH3 Character 5 (plush) |  |

| | |
|---|---|
| CH3 Character 6 (plush) |  |
| CH3 Character 7 (plush) |  |
| CH3 Character 8 (plush) |  |

7. The Poppy Playtime video game has become a global success that resonates with children and adults worldwide and has gained wide exposure on platforms such as iOS, Google Play, Steam, PlayStation, YouTube and Twitch. For example, playthrough videos of Chapter 1 of Poppy Playtime have received billions of views on YouTube and TikTok, and 11 million downloads on PC and mobile. As such, the Poppy Playtime trademark and characters are invaluable assets of Plaintiff's business.

8. In addition to the popular video game, a variety of licensed Poppy Playtime products are available, including stuffed toys, posters, and clothing (collectively, the "Poppy Playtime Products").

9.      Poppy Playtime Products are distributed and sold to consumers directly through Plaintiff's website at poppyplaytime.com, as well as through authorized retailers in the United States, including retailers in Illinois.

10.     Plaintiff has used its POPPY PLAYTIME trademark (the "POPPY PLAYTIME Trademark") for many years in connection with the Poppy Playtime video game and related line of Poppy Playtime Products and has continuously sold products under the POPPY PLAYTIME trademark. As a result of this long-standing use, strong common law trademark rights have amassed in the POPPY PLAYTIME Trademark. Plaintiff's use of the mark has also built substantial goodwill in and to the POPPY PLAYTIME Trademark. Plaintiff has registered the below POPPY PLAYTIME Trademark with the United States Patent and Trademark Office.

| Registration No. | Trademark |
|---|---|
| 7,157,530 | POPPY PLAYTIME |

11.     The above U.S. registration for the POPPY PLAYTIME Trademark is valid, subsisting, and in full force and effect.  The registration for the POPPY PLAYTIME Trademark constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use the POPPY PLAYTIME Trademark pursuant to 15 U.S.C. § 1057 (b).  A true and correct copy of the United States Registration Certificate for the above-listed POPPY PLAYTIME Trademark is attached hereto as **Exhibit 1**.

12.     The POPPY PLAYTIME Trademark is distinctive when applied to the Poppy Playtime Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.  Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that products bearing the POPPY PLAYTIME Trademark are manufactured to the highest quality standards.

13.     The POPPY PLAYTIME Trademark is a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1) and has been continuously used and never abandoned.  The innovative marketing and product designs of the Poppy Playtime Products have enabled the Poppy Playtime brand to achieve widespread recognition and fame and have made the POPPY PLAYTIME Trademark one of the most well-known marks in the video game industry.  The widespread fame and significant goodwill associated with the Poppy Playtime brand have made the POPPY PLAYTIME Trademark a valuable asset of Plaintiff.

14.     Plaintiff has expended substantial time, money, and other resources in advertising and promoting the POPPY PLAYTIME Trademark.  Poppy Playtime Products have also been the subject of extensive unsolicited publicity resulting from their fame and innovative designs.  As a result, products bearing the POPPY PLAYTIME Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff.  Poppy Playtime Products have become among the most popular of their kind.  The POPPY PLAYTIME Trademark has achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the mark.  As such, the goodwill associated with the POPPY PLAYTIME Trademark is of incalculable and inestimable value to Plaintiff.

15.     Plaintiff has registered its Poppy Playtime copyrighted works (the "Poppy Playtime Copyrighted Works") with the United States Copyright Office, which are as follows: (1) "HUGGY WUGGY 2D" (U.S. Copyright Registration No. VA0002288105), issued by the Register of Copyrights on February 23, 2022, and the corresponding supplemental registration: VA0002337317; (2) "MOMMY LONG LEGS 2D" (U.S. Copyright Registration No. VA0002293330), issued by the Register of Copyrights on February 24, 2022; (3) "POPPY" (U.S. Copyright Registration No. VA0002294398), issued by the Register of Copyrights on April 6,

2022, and the corresponding supplemental registration: VA0002328878; (4) "KISSY MISSY" (U.S. Copyright Registration No. VA0002295039), issued by the Register of Copyrights on April 4, 2022, and the corresponding supplemental registration: VA0002329039; (5) "KILLY WILLY" (U.S. Copyright Registration No. VA 0002313745), issued by the Register of Copyrights on August 15, 2022; (6) "Grab Pack." (U.S. Copyright Registration No. VA0002295044), issued by the Register of Copyrights on April 4, 2022, and the corresponding supplemental registration: VA0002324267; (7) "Playtime Co" (U.S. Copyright Registration No. VA0002315377), issued by the Register of Copyrights on April 4, 2022; (8) "Boogie Bot" (U.S. Copyright Registration No. VA0002308194), issued by the Register of Copyrights on April 4, 2022, and the corresponding supplemental registration: VA0002324268; (9) "Candy Cat." (U.S. Copyright Registration No. VA0002299187), issued by the Register of Copyrights on April 6, 2022; (10) "Bunzo Bunny" (U.S. Copyright Registration Nos. VAu001467492 and VA0002302450), issued by the Register of Copyrights on April 6, 2022 and May 31, 2022, respectively, and the corresponding supplemental registration: VA0002337322; (11) "Daddy Long Legs" (U.S. Copyright Registration No. VA0002307871), issued by the Register of Copyrights on June 17, 2022; (12) "PJ Pug-a-Pillar" (U.S. Copyright Registration Nos. VAu001467493, VA0002305066, and VA0002309543), issued by the Register of Copyrights on April 6, 2022, May 31, 2022, and July 6, 2022, respectively; (13) "The Player" (U.S. Copyright Registration No. VA0002307489), issued by the Register of Copyrights on July 6, 2022; (14) "Bron" (U.S. Copyright No. VA0002307750), issued by the Register of Copyrights on July 11, 2022; (15) "Poppy Playtime" (U.S. Copyright Registration No. VA0002313620), issued by the Register of Copyrights on August 15, 2022; (16) "Baby Long Legs" (U.S. Copyright Registration No. VA0002313618), issued by the Register of Copyrights on August 15, 2022; (17) "Boxy Boo!" (U.S. Copyright Registration No.

VAu001481285), issued by the Register of Copyrights on August 31, 2022; (18) "Catbee" (U.S. Copyright Registration No. VA0002314605), issued by the Register of Copyrights on April 4, 2022; (19) "Daisy" (U.S. Copyright Registration No. VA0002309221), issued by the Register of Copyrights on April 4, 2022; (20) "Kick-me-Paul" (U.S. Copyright Registration No. VA0002309536), issued by the Register of Copyrights on July 6, 2022; (21) "Owen the Oven" (U.S. Copyright Registration No. VA0002309540), issued by the Register of Copyrights on July 6, 2022; (22) "Sir Poops-A-Lot" (U.S. Copyright Registration No. VA0002309546), issued by the Register of Copyrights on July 6, 2022; (23) "PROJECT: PLAYTIME Huggy (smile)" (U.S. Copyright Registration No. VA0002343263), issued by the Register of Copyrights on March 10, 2023; (24) "PROJECT: PLAYTIME Kissy Missy (teeth)" (U.S. Copyright Registration No. VA0002343260), issued by the Register of Copyrights on March 10, 2023; (25) "PROJECT: PLAYTIME Train" (U.S. Copyright Registration No. VA0002343265), issued by the Register of Copyrights on March 10, 2023; (26) "PROJECT: PLAYTIME Logo" (U.S. Copyright Registration No. VA0002343511), issued by the Register of Copyrights on March 10, 2023; (27) "PROJECT: PLAYTIME Coin" (U.S. Copyright Registration No. VA0002343789), issued by the Register of Copyrights on March 10, 2023; and (28) "PROJECT: PLAYTIME Ticket" (U.S. Copyright Registration No. VA0002343752), issued by the Register of Copyrights on March 10, 2023; (29) "PROJECT: PLAYTIME Player" (U.S. Copyright Registration No. VA0002343147), issued by the Register of Copyrights on March 10, 2023; (30) "PROJECT: PLAYTIME Phone (Phase 2)" (U.S. Copyright Registration No. VA0002364954), issued by the Register of Copyrights on July 26, 2023; (31) "PROJECT: PLAYTIME Logo (Phase 2)" (U.S. Copyright Registration No. VA0002364960), issued by the Register of Copyrights on July 26, 2023; (32) "CH3 Main Character (big)" (U.S. Copyright Registration No. VAu001501019), issued by the Register of

Copyrights on July 12, 2023; (33) "CH3 Main Character (plush)" (U.S. Copyright Registration No. VAu001501018), issued by the Register of Copyrights on July 12, 2023; (34) "CH3 Character 2 (plush)" (U.S. Copyright Registration No. VAu001505729), issued by the Register of Copyrights on July 13, 2023; (35) "CH3 Character 3 (plush)" (U.S. Copyright Registration No. VAu001505841), issued by the Register of Copyrights on July 13, 2023; (36) "CH3 Character 4 (plush)" (U.S. Copyright Registration No. VAu001505833), issued by the Register of Copyrights on July 13, 2023; (37) "CH3 Character 5 (plush)" (U.S. Copyright Registration No. VAu001505728), issued by the Register of Copyrights on July 13, 2023; (38) "CH3 Character 6 (plush)" (U.S. Copyright Registration No. VAu001505840), issued by the Register of Copyrights on July 13, 2023; (39) "CH3 Character 7 (plush)" (U.S. Copyright Registration No. VAu001505843), issued by the Register of Copyrights on July 13, 2023; (40) "CH3 Character 8 (plush)" (U.S. Copyright Registration No. VAu001505842), issued by the Register of Copyrights on July 13, 2023; (41) "Poppy Playtime - Chapter 2." (U.S. Copyright Registration No. PA0002352982), issued by the Register of Copyrights on June 8, 2022; (42) "Poppy Playtime." (U.S. Copyright Registration No. PA0002352981), issued by the Register of Copyrights on June 8, 2022; (43) "PROJECT: PLAYTIME Factory." (U.S. Copyright Registration No. PA0002405148), issued by the Register of Copyrights on March 10, 2023; (44) "CH3 Teaser Trailer #2 (July 26, 2023)" (U.S. Copyright Registration No. PA0002421932), issued by the Register of Copyrights on July 26, 2023. True and correct copies of the records from the U.S. Copyright Office website for the above-referenced Poppy Playtime Copyrighted Works are attached hereto as **Exhibit 2**.

16.     Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Poppy Playtime Copyrighted Works to the public.

17.     Since their first publication, the Poppy Playtime Copyrighted Works have been used on the Poppy Playtime Products and are featured on Plaintiff's website at poppyplaytime.com. Poppy Playtime Products featuring the Poppy Playtime Copyrighted Works are advertised on Plaintiff's website at poppyplaytime.com.

18.     Poppy Playtime Products typically include the registered POPPY PLAYTIME Trademark and/or one or more of the Poppy Playtime Copyrighted Works. As such, Poppy Playtime Products are recognized by the public as being exclusively associated with the Poppy Playtime brand.

**The Defendants**

19.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

20.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their

counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

21.     The success of the Poppy Playtime video game and brand has resulted in significant counterfeiting of the POPPY PLAYTIME Trademark and copying of the Poppy Playtime Copyrighted Works.  Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.  In recent years, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Poppy Playtime Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, and Temu, including the e-commerce stores operating under the Seller Aliases.  The Seller Aliases target consumers in this Judicial District and throughout the United States.  According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020.  *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021,* U.S. Customs and Border Protection (**Exhibit 3**).  Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong.  *Id.*

22.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."  **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office

of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. **Exhibit 5** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 5** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186–87.

23.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Unauthorized Poppy Playtime Products to residents of Illinois.

24.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Plaintiff has not licensed or authorized

Defendants to use the POPPY PLAYTIME Trademark or copy or distribute the Poppy Playtime Copyrighted Works, and none of the Defendants are authorized retailers of genuine Poppy Playtime Products.

25. Many Defendants also deceive unknowing consumers by using the POPPY PLAYTIME Trademark without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the internet looking for websites relevant to consumer searches for Poppy Playtime Products. Other e-commerce stores operating under Seller Aliases omit using the POPPY PLAYTIME Trademark in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Poppy Playtime Products.

26. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

27. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Poppy Playtime Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

28. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating

under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Poppy Playtime Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Poppy Playtime Products were manufactured by and come from a common source and that Defendants are interrelated.

29. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

30. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

31. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Poppy Playtime Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used

and continue to use the POPPY PLAYTIME Trademark and/or copies of the Poppy Playtime Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Poppy Playtime Products into the United States and Illinois over the internet.

32.     Defendants' unauthorized use of the POPPY PLAYTIME Trademark and/or copies of the Poppy Playtime Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Poppy Playtime Products, including the sale of Unauthorized Poppy Playtime Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

33.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered POPPY PLAYTIME Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The POPPY PLAYTIME Trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Poppy Playtime Products offered, sold, or marketed under the POPPY PLAYTIME Trademark.

35.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the POPPY PLAYTIME Trademark without Plaintiff's permission.

36.     Plaintiff's United States Registration for the POPPY PLAYTIME Trademark (**Exhibit 1**) is in full force and effect.  On information and belief, Defendants have knowledge of

22

Plaintiff's rights in the POPPY PLAYTIME Trademark and are willfully infringing and intentionally using infringing and counterfeit versions of the POPPY PLAYTIME Trademark. Defendants' willful, intentional, and unauthorized use of the POPPY PLAYTIME Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Poppy Playtime Products among the general public.

37.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its POPPY PLAYTIME Trademark.

39.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Poppy Playtime Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

40.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Poppy Playtime Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Poppy Playtime Products by Plaintiff.

42.     By using the POPPY PLAYTIME Trademark in connection with the sale of Unauthorized Poppy Playtime Products, Defendants create a false designation of origin and a

misleading representation of fact as to the origin and sponsorship of the Unauthorized Poppy Playtime Products.

43.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Poppy Playtime Products to the general public involves the use of a counterfeit mark and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of its Poppy Playtime brand.

### COUNT III
### COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)

45.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

46.     The Poppy Playtime Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

47.     Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Poppy Playtime Copyrighted Works.  The Poppy Playtime Copyrighted Works are protected by the U.S. Copyright Registration Nos. listed in Paragraph 15, which were duly issued to Plaintiff by the United States Copyright Office.  At all relevant times, Plaintiff has been and still is the owner of all rights, title, and interest in the Poppy Playtime Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

48. The Poppy Playtime Copyrighted Works are published on the internet and available to Defendants online. As such, Defendants had access to the Poppy Playtime Copyrighted Works via the internet.

49. Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Poppy Playtime Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Poppy Playtime Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Poppy Playtime Copyrighted Works. Such conduct infringes and continues to infringe the Poppy Playtime Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

50. Defendants reap the benefits of the unauthorized copying and distribution of the Poppy Playtime Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Poppy Playtime Products.

51. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Poppy Playtime Products that capture the total concept and feel of the Poppy Playtime Copyrighted Works.

52. On information and belief, Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

53. Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

54. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Poppy Playtime Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the POPPY PLAYTIME Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Poppy Playtime Product or is not authorized by Plaintiff to be sold in connection with the POPPY PLAYTIME Trademark;

    b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Poppy Playtime Copyrighted Works in any manner without the express authorization of Plaintiff;

    c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Poppy Playtime Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the POPPY PLAYTIME Trademark and/or the Poppy Playtime Copyrighted Works;

    d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Poppy Playtime Products are those sold under the authorization, control,

or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e.  further infringing the POPPY PLAYTIME Trademark and/or the Poppy Playtime Copyrighted Works and damaging Plaintiff's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's POPPY PLAYTIME Trademark or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Poppy Playtime Copyrighted Works;

2)  Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, DHgate, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the POPPY PLAYTIME Trademark and/or which bear the Poppy Playtime Copyrighted Works;

3)  That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the POPPY PLAYTIME Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)  In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the POPPY PLAYTIME Trademark;

27

5) As a direct and proximate result of Defendants' infringement of the Poppy Playtime Copyrighted Works, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 15th day of May 2024.      Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Quinn B. Guillermo
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
qguillermo@gbc.law

*Counsel for Plaintiff EnchantedMob, Inc. and Mob Entertainment, Inc.*